UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-11380-RBR |
| STEMTECH INTERNATIONAL, INC., | CHAPTER 11 |
| Debtor. | |

**DEBTOR'S APPLICATION
FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING
EMPLOYMENT OF SEESE, P.A.
AS COUNSEL FOR DEBTOR-IN-POSSESSION**

STEMTECH INTERNATIONAL, INC. ("Debtor"), respectfully requests entry of interim and final orders of the Court authorizing the employment of MICHAEL D. SEESE and the law firm of SEESE, P.A., to represent the Debtor in this case (the "Case"), and states as follows:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicate for relief requested is U.S.C. § 327(a).

**BACKGROUND**:

3.     On February 2, 2017, the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.  The Debtor remains in possession of its assets and is operating its business as a debtor-in-possession pursuant to the authority of 11 U.S.C. §§ 1107 and 1108.

**A.     Organization**

4.     The Debtor was incorporated as a Delaware corporation in 2005.

5.      The Debtor is the direct and indirect owner of over 47 subsidiaries.[1] Twenty-seven of the subsidiaries are operating. Four (4) of the subsidiaries are domestic, with two (2) operating in the United States:  (a) Stemtech HealthSciences, Inc., (b) Stemtech HealthSciences Corp., (c) Stemtech Taiwan Holding, Inc., and (d) Stemtech Japan Holding, Inc.  The remaining subsidiaries operate internationally.

**B.    Business Operations**

6.      The Debtor was formed in order to bring a patented and clinically studied nutraceutical product to the marketplace.  The initial product, called StemEnhance®, created a new dietary supplement category called stem cell nutrition.  Through the years, the Debtor has developed a number of products, including SE2® and SE3®.  Through research and development efforts, the Debtor has also created a focused line of related, clinically studied and patent pending products.   The Debtor currently markets 10 products:  AFA Extract, SE2®, StemRelease3™, StemFlo®, StemSport®, ST-5®, StemPets®, StemEquine® .DermaStem® and DermaStem Lift™.

7.      The Debtor has worldwide licenses to market certain nutraceutical products through direct sales marketing.  At the present time, the Debtor has filed for 19 patents, several of which have been issued.

---

[1] The subsidiaries include:  (a) Stemtech HealthSciences, Inc., (b) Stemtech HealthSciences Corp., (c) Stemtech Canada, Inc., (d) Stemtech Puerto Rico, (e) Stemtech Jamaica, (f) Stemtech Trinidad and Tobago, Ltd., (g) Stemtech Africa Pty, Ltd., (h) Stemtech Distribution Namibia Pty, Ltd., (i) Stemtech Ghana, Ltd., (j) Stemtech Intl East Africa, Ltd., (k) Stemtech Intl Ivory Coash Branch, (l) Stemtech Togo SARL, (m) Stemtech Health Nigeria, Ltd., (n) Stemtech Europe BV, (o) Stemtech New Zealand, Ltd., (p) Stemtech Hong Kong, Ltd., (q) Stemtech Korea, (r) Stemtech Singapore PTE, (s) PT Stemtech Indonesia, (t) Stemtech Thailand Co., Ltd., (u) Stemtech Malaysia Holding Sdn Bhd (which owns Stemtech Malaysia Sdn Bhd), (v) Stemtech Taiwan Holding, Inc. (which owns Stemtech Taiwan Branch), (w) Stemtech Japan Holding, Inc. (which owns Stemtech Japan GK), (x) Stemtech Philippines, Inc., (y) Stemtech Services SARL de CV, (z) Stemtech HealthSciences SdeRL de CV (which owns Commercial zadora & Distr. De Salud SA de CV <u>and</u> Importadora de Salud & Nuri Intl de Mexico SA), (aa) Technologica De Ren Celeular SA, (bb) Stemtech Colomiba, Ltda, (cc) Stemtech Do Brasil Comercio de Productos, and (dd) Stemtech Dominican Republic SRL.  The following indirect subsidiaries are owned by Stemtech Europe BV:  (a) Stemtech Germany Gmbh, (b) Stemtech France SARL, (c) Stemtech Europe Limited, (d) Stemtech Trading Limited, (e) Stemtech UK Limited, (f) Stemtech Spain SL, (g) Stemtech Romania, (h) Stemtech Bulgaria EOOD, (i) Stemtech India Pvt Ltd., (j) Stemtech Austria, (k) Stemtech Switzerland, and (l) Stemtech Serbia.

18747702 0929080

8. In order to market and distribute products, the Debtor works with over 200,000 independent distributors and customers in over 50 countries on 6 continents. In order to facilitate domestic and international distribution, the Debtor is organized into 6 divisions, each of which is led by a regional executive. These 6 divisions are (a) North America, (b) Asian/Pacific, (c) African, (d) New Zealand/Australia, (e) Europe, and (f) Latin America. Each country located within a division is led by a general or market manager. The Debtor's goal is to be the recognized leader in stem cell nutrition.

9. The Debtor was previously listed as one of the fastest growing privately held companies in the United States, as a result of the Debtor having grown organically by over 450%. Worldwide sales have grown from $11,000,000.00 in 2006 to approximately $65,000,000.00 in 2014, with cumulative sales approaching $460,000,000.00.

10. On a consolidated basis for the year ended December 31, 2015, the Debtor experienced a net loss of $3,106,917.00 on net sales of $52,548,714.00. Of the net loss, approximately $1,154,000.00 was attributable to foreign currency translation adjustments. On a consolidated basis for the 9-months ended September 30, 2016, the Debtor experienced a net loss of $2,764,384.00 on net sales of $34,592,126.00.

11. The overall cash management system provides for each of the subsidiaries to maintain its own bank account. The subsidiaries incur their own local overhead expenses, such as rent, wages and related expenses, and pay for product manufactured, which is ordinarily ordered by Stemtech HealthSciences Corp. Back-office, administrative and other support is provided by Stemtech HealthSciences Corp. Inter-company ledgers are maintained, and funds are paid or adjustments made to account for allocated corporate overhead and invoicing for inventory.

18747702 0929080

**C.     Financing**

12.     In order to finance operations, the Debtor entered into a line of credit for the amount of $2,500,000.00 (the "Line of Credit") with Opus Bank ("Opus Bank") in December, 2013. The Line of Credit originally matureed in March, 2015, was renewed through May, 2016 and was subsequently modified and converted into an amortizing loan (the "Converted Line") at a fixed interest rate of 8% per annum. The Converted Line matured on December 1, 2016. In addition to interest payments, the Debtor was obligated to make principal reduction payments in the amount of $5,000.00 per month. The outstanding balance owed was approximately $2,332,082.44 as of January 23, 2017, including interest, default interest, late charges, fees and other charges.

13.     On March 25, 2015, Opus Bank made a term loan to the Debtor in the amount of $1,500,000.00 (the "Term Loan"). The Term Loan was subsequently modified and matured on December 1, 2016 and provides for a fixed interest rate of 8% per annum. Additionally, the Debtor was obligated to pay interest payments as well as a principal reduction payment in the amount of $5,000.00 per month. The outstanding balance owed was $1,006,000.23 as of January 23, 2017, including interest, default interest, late charges, fees and other charges.

14.     In order to secure the Converted Line and the Term Loan, the Debtor granted Opus Bank a security interest in and to, and Lender recorded a lien against, substantially all of the Debtor's assets, including, without limitation, receivables, contracts, intellectual properties, accounts, inventory, equipment, general intangibles, and equity interests excluding, however, the equity interests in any foreign subsidiary and/or foreign affiliate owned by and/or under common control with the Debtor.

18747702 0929080

15.     In August, 2013, the Debtor borrowed 1,000,000 Swiss Francs on an unsecured basis from Wilhelm Keller the "Unsecured Loan").  The Unsecured Loan bears interest at the rate of 6% per annum and was originally scheduled to mature in December, 2016.  The Unsecured Loan was modified and is now scheduled to mature in September, 2017.  Beginning in March, 2015, STI was obligated to commence making principal and interest payments on a quarterly basis.  Additionally, the holder of the underlying promissory note was issued warrants to purchase 1,010 shares of common stock at an exercise price of $99.00 per share.  The Unsecured Loan is subordinated to the Converted Loan and Term Loan. The outstanding balance owed was $772,000.00 as of December 31, 2015.

**D.     Assets and Liabilities**

16.     As of September 30, 2016, on a consolidated basis at book value, the Debtor and its subsidiaries had total assets of approximately $7,469,733.00, including current assets in the amount of $6,046,773.00.  As of the same date, the Debtor and its subsidiaries had total liabilities of $13,508,032.00, including current liabilities of $12,453,260.00.

## EVENTS LEADING TO BANKRUPTCY

16.     In 2008, the Debtor was sued for copyright infringement (the "Copyright Litigation").  The Copyright Litigation was commenced based on the Debtor's alleged unauthorized use of photographic images created by the plaintiff in the Copyright Litigation. The plaintiff in the Copyright Litigation had licenses the images to the Debtor for $700.00. Although vigorously contested by the Debtor, in 2013, a jury returned a verdict in favor of the plaintiff in the amount of $1,600,000.00.  On July 18, 2014, the United States District Court for the District of Delaware entered judgment in favor of the plaintiff and against the Debtor and, on December 29, 2015, entered an amended judgment in favor of the plaintiff and against the

Debtor (the "Judgment").  The Debtor appealed the Judgment to the United States Court of Appeals for the Third Circuit.  On August 24, 2016, the Court of Appeals for the Third Circuit affirmed the Judgment.  In January, 2017, the Debtor filed a *Petition for a Writ of Certiorari* with the United States Supreme Court.

17. The plaintiff in the Copyright Litigation (the "Judgment Creditor") has vigorously pursued collection efforts.  These efforts have included an attempted levy against treasury stock, and the appointment of a receiver for purposes of liquidating the patents (pledged to Opus Bank) and for an assignment of equity interests in certain subsidiaries.

18. Additionally, the Debtor was named a defendant and sued by a former supplier in an effort to recover amounts allegedly owed for product supplied to the Debtor.  The Debtor counter-claims that the former supplier breached a supply agreement, including, without limitation, due to its inability to meet the Debtor's demand for product, which accounted for nearly 60-70% of input for product.  Consequently, the inability of the former supplier to meet demand resulted in decreased production and revenue.  The Debtor also counter-claims that the former supplier breached agreements and solicited a number of Debtor's executives, thus causing breaches of their agreements with the Debtor.

19. The foregoing litigation has been costly and depleted cash which would otherwise be used for day-to-day business operations.  These costs, coupled with losses stemming primarily from foreign currency adjustments, have resulted in the Debtor defaulting on the Converted Line and Term Loan, both of which matured on December 1, 2016.

20. Finally, on January 30, 2017, the Debtor was served with a three (3) day notice of default and opportunity to cure in connection with the corporate headquarters lease.

18747702 0929080

21.     While the Debtor's business continues to show promise, and the Debtor anticipates returning to profitability, after much deliberation, the Debtor elected to seek relief under Chapter 11 in order to preserve the loss of valuable assets, including its patents and the equity interests in its subsidiaries, avoid further depletion of cash in the related litigation, and enable management to focus their efforts on the business for the benefit of all creditors and interested parties.

## RELIEF REQUESTED

22.     Subject to the approval of this Court, the Debtor desires to employ MICHAEL D. SEESE ("Seese") and the law firm of SEESE, P.A. as attorneys in this Case.

23.     Seese is qualified to practice in this Court and to advise the Debtor on its relations with, and responsibilities to, the creditors and other interested parties.

24.     Seese's depth of experience in bankruptcy matters, and, especially, in business reorganizations, makes Seese qualified to deal effectively with the legal issues that may arise in the context of this Case.  Therefore, the Debtor believes that Seese is well qualified to serve as its bankruptcy counsel and that retention of Seese is in the best interests of the estate.

## SERVICES TO BE RENDERED

25.     Seese's services are necessary and will enable and assist the Debtor in performing its duties as a debtor and debtor-in-possession.  In connection with this Case, Seese will render the following types of professional services:

   a.   Advise the Debtor generally regarding matters of bankruptcy law in connection with this Case;

   b.   Advise the Debtor of the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable bankruptcy rules, including local rules, pertaining to the administration of the Case and U.S. Trustee Guidelines related to the daily operation of its business and administration of this estate;

18747702 0929080

    c.    To prepare motions, applications, answers, proposed orders, reports and any other papers necessary in connection with the administration of the estate;

    d.    To negotiate with creditors, prepare and seek confirmation of a plan of reorganization and related documents, and assist the Debtor with implementation of any plan;

    e.    To assist the Debtor in the analysis, negotiation and disposition of estate assets for the benefit of the estate and its creditors;

    f.    Review executory contracts and unexpired leases;

    g.    To negotiate and document any debtor-in-possession financing and exit financing;

    h.    To advise the Debtor regarding general corporate matters and litigation issues; and

    i.    To render such other advice and services as the Debtor may require.

## **DISINTRESTEDNESS OF PROFESSIONALS**

26. To the best of the Debtor's knowledge, neither said attorneys nor said law firm has any connection with the creditors or other parties in interest or their respective attorneys, except as disclosed in the Affidavit in support of this Application.

27. Seese has agreed to charge its standard hourly rates as compensation for the services to be rendered and expenses to be incurred in connection with representation of the Debtor. Seese will not be paid any compensation by the Debtor except upon application to and approval by the Court after notice and hearing. It is anticipated that Seese will be paid any awarded amounts from unencumbered cash, cash collateral and/or carve out.

28. As disclosed more fully in the Affidavit, Seese has represented the Debtor prior to the date of this Application in connection with preparing for this Case.

29. To the best of the Debtor's knowledge and based on the Affidavit of Seese submitted in connection with this Application, there are no arrangements between Seese and any

18747702 0929080

other entity to share compensation to be received in connection with this Case, other than as permitted by section 504 of the Bankruptcy Code.

30. Under applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtor proposes to pay Seese its standard hourly rates and reimburse Seese for expenses according to Seese's customary reimbursement policies. The hourly rate of Michael Seese is $500.00 per hour.

31. The hourly rates discussed above are Seese's standard hourly rates charged to all clients. These rates are subject to adjustment, generally on an annual basis to reflect, among other things, seniority.

32. Attached to this Motion as Exhibit "A" is the proposed attorney's verified statement demonstrating that MICHAEL D. SEESE and the law firm of SEESE, P.A. are "disinterested" as required by 11 U.S.C. § 327(a) and Bankruptcy Rule 2014.

**WHEREFORE,** the Debtor respectfully requests the entry of interim and final orders, the forms of which are attached hereto as Exhibits "B" and "C", respectively: (i) authorizing the retention of SEESE, P.A. and the law firm of SEESE, P.A. pursuant to 11 U.S.C. §§ 327 and 330, *nunc pro tunc* to the petition date; (ii) setting a final hearing on the Application not less than twenty one (21) days after the Petition Date pursuant to FRBP Rule 6003(a); and (iii) granting such other and further relief as this Court deems proper.

DATED February 2, 2017

|  | STEMTECH INTERNATIONAL, INC.<br><br>By: _____<br>Ray Carter<br>Its: Chief Executive Officer |
|---|---|

18747702 0929080