**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| IN RE: | CASE NO. 17-11380-BKC-RBR |
|---|---|
| STEMTECH INTERNATIONAL, INC., | CHAPTER 11 |
| Debtor. | |

**DEBTOR'S AGREED *EX-PARTE* MOTION**
**FOR AUTHORITY TO USE CASH COLLATERAL**

STEMTECH INTERNATIONAL, INC. ("Debtor"), by and through its undersigned counsel, files this *Agreed Ex-Parte Motion for Authority to Use Cash Collateral* ("Motion"), and in support of this Motion, states as follows:

**BRIEF STATEMENT OF RELIEF REQUESTED**

By this Motion, the Debtor requests that this Court enter an order authorizing the Debtor to use cash collateral in accordance with the budget attached hereto as Exhibit "A" (the "Budget"). The Debtor proposes to use cash collateral for purposes of funding expenses, including, without limitation, payroll, rent, and insurance.

On April 6, 2017, the Court entered the *Final Order Authorizing Use of Cash Collateral* [ECF No. 80] (the "Current Order"), the form of which was agreed to by the Debtor, Opus Bank and the Official Committee of Unsecured Creditors (the "Committee").

The Current Order provides, in part, that the Debtor's authorization to use cash collateral shall be effective through and including June 15, 2017 unless otherwise terminated thereunder, or extended with the consent of Opus Bank or by separate order of the Court.

Both Opus Bank and the Committee agree and consent to the Debtor's continued use of cash collateral in accordance with the Budget and the form of order attached hereto as Exhibit "B".

18749885 0929080

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (M).

2.     The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of the Bankruptcy Code.

## GENERAL BACKGROUND

3.     On February 2, 2017, the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.   The Debtor remains in possession of its assets and is operating its business as a debtor-in-possession pursuant to the authority of 11 U.S.C. §§ 1107 and 1108.

**A.**    **Organization**

4.     The Debtor was incorporated as a Delaware corporation in 2005.

5.     The Debtor was, at one time, the direct and indirect owner of over 47 subsidiaries, which operated within the United States and internationally.

**B.**    **Business Operations**

6.     The Debtor was formed to bring a patented and clinically studied nutraceutical product to the marketplace.  Through the years, the Debtor has developed a number of products.

7.     In order to market and distribute products, the Debtor works with a large network of independent distributors and customers in over 50 countries on 6 continents.  In order to facilitate domestic and international distribution, the Debtor is organized into 6 divisions, each of which is led by a regional executive.  These 6 divisions are (a) North America, (b) Asian/Pacific,

18749885  0929080

(c) African, (d) New Zealand/Australia, (e) Europe, and (f) Latin America.   Each country located within a division is led by a general or market manager.  The Debtor's goal is to be the recognized leader in stem cell nutrition.

## C.    Primary Secured Financing

8.      In order to finance operations, the Debtor entered into a line of credit for the amount of $2,500,000.00 (the "Line of Credit") with Opus Bank ("Opus Bank") in December, 2013.  The Line of Credit originally matureed in March, 2015, was renewed through May, 2016 and was subsequently modified and converted into an amortizing loan (the "Converted Line") at a fixed interest rate of 8% per annum.  The Converted Line matured on December 1, 2016.  In addition to interest payments, the Debtor was obligated to make principal reduction payments in the amount of $5,000.00 per month. The outstanding balance owed was approximately $2,332,082.44 as of January 23, 2017, including interest, default interest, late charges, fees and other charges.

9.      On March 25, 2015, Opus Bank made a term loan to the Debtor in the amount of $1,500,000.00 (the "Term Loan").  The Term Loan was subsequently modified and matured on December 1, 2016 and provides for a fixed interest rate of 8% per annum.  Additionally, the Debtor was obligated to pay interest payments as well as a principal reduction payment in the amount of $5,000.00 per month.  The outstanding balance owed was $1,006,000.23 as of January 23, 2017, including interest, default interest, late charges, fees and other charges.

10.     In order to secure the Converted Line and the Term Loan, the Debtor granted Opus Bank a security interest in and to, and Lender recorded a lien against, substantially all of the Debtor's assets, including, without limitation, receivables, contracts, certain intellectual properties, accounts, inventory, equipment, general intangibles, and equity interests excluding,

3

however, the equity interests in any foreign subsidiary and/or foreign affiliate owned by and/or under common control with the Debtor.    The foregoing is without prejudice to certain rights of the Committee to challenge such claims and liens.

## EVENTS LEADING TO BANKRUPTCY

11.    In 2008, the Debtor was sued for copyright infringement (the "Copyright Litigation").  On July 18, 2014, the United States District Court for the District of Delaware entered judgment in favor of the plaintiff and against the Debtor and, on December 29, 2015, entered an amended judgment in favor of the plaintiff and against the Debtor (the "Judgment"). The Debtor appealed the Judgment to the United States Court of Appeals for the Third Circuit. On August 24, 2016, the Court of Appeals for the Third Circuit affirmed the Judgment.    In January, 2017, the Debtor filed a *Petition for a Writ of Certiorari* with the United States Supreme Court.

12.    The plaintiff in the Copyright Litigation (the "Judgment Creditor") vigorously pursued collection efforts.  These efforts included an attempted levy against treasury stock, and the appointment of a receiver for purposes of liquidating the patents (pledged to Opus Bank) and for an assignment of equity interests in certain subsidiaries.

13.    Additionally, the Debtor was named a defendant and sued by a former supplier in an effort to recover amounts allegedly owed for product supplied to the Debtor.   The Debtor counter-claims that the former supplier breached a supply agreement, including, without limitation, due to its inability to meet the Debtor's demand for product, which accounted for nearly 60-70% of input for product.  The Debtor also counter-claims that the former supplier breached agreements and solicited a number of Debtor's executives, thus causing breaches of their agreements with the Debtor.

4

14.     The foregoing litigation was costly and depleted cash which would otherwise be used for day-to-day business operations.  These costs, coupled with losses stemming primarily from foreign currency adjustments, have resulted in the Debtor defaulting on the Converted Line and Term Loan, both of which matured on December 1, 2016.

15.     Finally, on January 30, 2017, the Debtor was served with a three (3) day notice of default and opportunity to cure in connection with the corporate headquarters lease.

16.     The Debtor elected to seek relief under Chapter 11 in order to preserve the loss of valuable assets, including its patents and the equity interests in its subsidiaries, avoid further depletion of cash in the related litigation, and enable management to focus their efforts on the business for the benefit of all creditors and interested parties.

## FACTS IN SUPPORT OF RELIEF REQUESTED

17.     On April 6, 2017, the Court entered the Current Order, the form of which was agreed to by the Debtor, Opus Bank and the Committee.

18.     The Current Order provides, in part, that the Debtor's authorization to use cash collateral shall be effective through and including June 15, 2017 unless otherwise terminated thereunder, or extended with the consent of Opus Bank or by separate order of the Court.

19.     Both Opus Bank and the Committee agree and consent to the Debtor's continued use of cash collateral in accordance with the Budget and the form of order attached hereto as Exhibit "B".

20.     By this Motion, the Debtor seeks an order authorizing the Debtor to continued using cash collateral.

21.     The Debtor seeks authority to use cash collateral in accordance with the Budget.

22.     The use of cash collateral is essential to the continued operation of the Debtor's

18749885  0929080

business for the Debtor to have the ability to utilize cash collateral.

## AUTHORITY IN SUPPORT OF RELIEF REQUESTED

23.     Pursuant to Section 363(c)(2)(B) of the Bankruptcy Code, a debtor-in-possession may use cash collateral with court approval after notice and a hearing. 11 U.S.C. § 363(c)(2)(B). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court "shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

24.     The Current Order includes adequate protection provisions for the benefit of Opus Bank.  Again, Opus Bank consents to the proposed use of cash collateral.

25.     Nevertheless, adequate protection can be provided by a number of different methods.   Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (1) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. §§ 361(1), (2), (3).   Adequate protection may also be provided or otherwise realized by the existence of an equity cushion in the collateral.

26.     What constitutes adequate protection is determined on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). However, regardless of how adequate protection is provided, the focus of the requirement is to protect a secured creditor from diminution in value

6

of its interest in the collateral during the period of use by the debtor. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

27.     Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim). As the court in *In re Megan Racine Assoc., Inc.*, 202 B.R. 660 (Bankr. N.D.N.Y. 1996) noted:

> Adequate protection . . . is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of the debtor's reorganization that is due to the imposition of the stay or is traceable to the use of such property.

*Id.* at 663.

28.     The Debtor believes that Opus Bank's interests are adequately protected by the provisions governing adequate protection in the Current Order, which shall continue in effect in the event the relief requested herein is granted.

## **CONSENSUAL RELIEF**

29.     The Current Order provides that the Debtor's use of cash collateral may be extended with the consent of Opus Bank.   Again, both Opus Bank and the Committee agree to the Debtor's continued use of cash collateral consistent and in accordance with the Budget and the proposed order attached hereto as Exhibit "B".

**WHEREFORE,** the Debtor respectfully requests that this Court grant this Motion and enter the proposed form of order attached hereto as Exhibit "B", as well as granting such other

18749885  0929080

and further relief that the Court may deem just and proper.

**RESPECTFULLY SUBMITTED** this 5th day of October, 2017.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

**SEESE, P.A.**
Attorneys for Debtor-in-Possession
101 N.E. 3rd Avenue, Suite 410
Ft. Lauderdale, Florida 33301
Telephone: (954) 745-5897

By: _____*s/Michael D. Seese*_____
            Michael D. Seese, Esq.
            Fla. Bar No. 997323
            mseese@seeselaw.com

18749885  0929080

**Stemtech International, Inc.**

**Case No. 17-11380-RBR**


**Exhibit "A"**

**Budget**

STI CASH FLOW FORECAST

## Stemtech International, Inc.
**Cash Flow Forecast**
**in thousands ('000s)**
**Thirteen Weeks Ended December 1, 2017**

| | 8-Sep | 15-Sep | 22-Sep | 29-Sep | 6-Oct | 13-Oct | 20-Oct | 27-Oct | 3-Nov | 10-Nov | 17-Nov | 24-Nov | 1-Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash receipts** | | | | | | | | | | | | | | |
| Dividends from Subsidiaries | $ 15 | $ 35 | $ 20 | $ 60 | $ 20 | $ 5 | $ 12 | $ 70 | $ 20 | $ - | $ 10 | $ 2 | $ 85 | $ 354 |
| Subtenant Rent | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total cash receipts** | **15** | **35** | **20** | **60** | **20** | **5** | **12** | **70** | **20** | **-** | **10** | **2** | **85** | **354** |
| **Cash disbursements** | | | | | | | | | | | | | | |
| Business Insurance | (5) | (6) | - | - | - | (5) | (6) | - | - | - | (5) | (6) | (21) | (54) |
| Interest Opus Bank | (15) | - | - | - | (21) | - | (6) | - | (21) | - | - | - | - | (63) |
| Rent | - | - | - | - | (24) | - | - | - | (24) | - | - | - | (24) | (72) |
| Bank Fees/Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total operating cash disbursements** | **(20)** | **(6)** | **-** | **-** | **(45)** | **(5)** | **(12)** | **-** | **(45)** | **-** | **(5)** | **(6)** | **(45)** | **(189)** |
| **Net Operating Cash Flow** | **(5)** | **29** | **20** | **60** | **(25)** | **-** | **-** | **70** | **(25)** | **-** | **5** | **(4)** | **40** | **165** |
| Restructuring Fees - Debtor Professionals | - | (18) | (18) | (20) | - | - | - | (20) | - | - | - | - | (20) | (96) |
| Restructuring Fees - Committee Professionals | - | (9) | (9) | (20) | - | - | - | (20) | - | - | - | - | (20) | (78) |
| UST Fees | - | - | - | - | - | - | - | (5) | - | - | - | - | - | (5) |
| **Total Non-Operating Cash Disbursements** | **-** | **(27)** | **(27)** | **(40)** | **-** | **-** | **-** | **(45)** | **-** | **-** | **-** | **-** | **(40)** | **(179)** |
| **Net cash flow** | **(5)** | **2** | **(7)** | **20** | **(25)** | **-** | **-** | **25** | **(25)** | **-** | **5** | **(4)** | **-** | **(14)** |
| Beginning bank cash | **15** | **10** | **12** | **5** | **25** | **-** | **-** | **-** | **25** | **-** | **-** | **5** | **1** | **15** |
| Net cash flow | (5) | 2 | (7) | 20 | (25) | - | - | 25 | (25) | - | 5 | (4) | - | (14) |
| **Ending bank cash** | **10** | **12** | **5** | **25** | **-** | **-** | **-** | **25** | **-** | **-** | **5** | **1** | **1** | **1** |

| **Cash Dividends from:** | | | | | | | | | | | | | | **Total** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | $ - | $ - | $ - | $ 10 | $ - | $ - | $ - | $ 10 | $ - | $ - | $ - | $ - | $ 10 | $ 30 |
| Mexico | 10 | 10 | 10 | 10 | 15 | - | 6 | 15 | 20 | - | 10 | - | 15 | 121 |
| Europe | - | 5 | - | - | - | - | - | - | - | - | - | - | 15 | 20 |
| New Zealand | - | 5 | 5 | 10 | - | 5 | - | 10 | - | - | - | - | 10 | 45 |
| Taiwan | 5 | 5 | - | 10 | 5 | - | 6 | 10 | - | - | - | - | 10 | 51 |
| South Korea | - | 5 | - | 5 | - | - | - | 10 | - | - | - | - | 10 | 30 |
| Togo | - | 5 | - | 5 | - | - | - | 10 | - | - | - | - | 10 | 30 |
| Other | - | - | 5 | 10 | - | - | - | 5 | - | - | - | 2 | 5 | 27 |
| Total Dividends | $ 15 | $ 35 | $ 20 | $ 60 | $ 20 | $ 5 | $ 12 | $ 70 | $ 20 | $ - | $ 10 | $ 2 | $ 85 | $ 354 |

**Stemtech International, Inc.**

**Case No. 17-11380-RBR**

**Exhibit "B"**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-11380-RBR |
| STEMTECH INTERNATIONAL, INC., | CHAPTER 11 |
|     Debtor. | |
| _____/ | |

**AGREED ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL**

    **THIS MATTER** came before the Court on the Debtor's *Agreed Ex-Parte Motion for Authority to Use Cash Collateral* [ECF No. _____] (the "Motion"), and the Court, having (a) reviewed the Motion; (b) reviewed the separate "13-Week Budgets" attached to the Motion (the "Original Budget") and to this Order as **Exhibit "A"** (the "Budget"); (c) having reviewed the file of this matter including the Court's *Final Order Authorizing Use of Cash Collateral* entered by the Court on April 6, 2017 [ECF No. 80] (the "April Order"); (d) having noted that the April Order

provides that the Debtor may continue to use cash collateral with the consent of Opus Bank or by separate order of the Court; (e) having noted that Opus Bank and the Official Committee of Unsecured Creditors (the "Committee") agree and consent to the Budget and to the entry of this Order; (f) having noted that the Debtor previously stipulated (without prejudice to the rights of the Committee), as set forth in this Order, that (the "Debtor Stipulations"): (1) the Debtor is indebted to Opus Bank in the amount of not less than $3,351,871.08 as of February 2, 2017 (the "Petition Date") without any defenses, counterclaims, or setoffs of any kind (the "Prepetition Obligations"); (2) the Prepetition Obligations are secured by valid, enforceable, properly perfected first priority liens in favor of Opus Bank on substantially all the Debtor's assets with exception of stock in the Debtor's foreign subsidiaries (the "Prepetition Collateral"); and (3) the Debtor represents and warrants it has reviewed Opus Bank's loan documents prepetition and did not identify any meritorious challenge actions; (g) having noted that the April Order bars the Debtor and every other party in interest (with exception of the Committee) from bringing a Challenge Action (as defined in the April Order) against Opus Bank for having failed to initiate an adversary proceeding against Opus Bank prior to the expiration of the Challenge Period (as defined in the April Order) on June 15, 2017; and (h) having noted that Opus Bank consented to extend the Challenge Period in the April Order for the Committee to August 22, 2017, or the date of entry of this Order, whichever is later, and such Challenge Period restriction does not apply to a Challenge Action (defined herein), and the Committee may bring a Challenge Action against Opus Bank at any time with respect to the Excluded Items (as defined hereinafter).  Accordingly, the Court being otherwise fully advised in the premises and based further on the entire record of the Hearing, it is

      **ORDERED** as follows:

      1.      The Motion is GRANTED, on a final basis, as provided herein.

2.      The Debtor is authorized to use "cash collateral," as that term is defined in 11 U.S.C. § 363(a) (the "Cash Collateral") upon the following terms and conditions:

(A)      The Debtor shall not use, sell, or expend, directly or indirectly outside of the ordinary course of business, the Cash Collateral of any of the following  parties asserting liens in such Cash Collateral, (i) Opus Bank, and (ii) Ray C. Carter, Jr. and Kasey L. Carter under a certain "Secured Promissory Note" dated April 14, 2016 and related documents (collectively, the "Secured Creditors"), except upon the terms and conditions set forth in this Order or as otherwise authorized by separate order of the Court.

(B)      The Debtor may use Cash Collateral solely for the purpose of funding those expenses in accordance with the Budget, a copy of which is attached hereto as **Exhibit "A"** and incorporated herein by reference, and with budgeted expenses not to exceed 115% of the amounts set forth in the Budget measured weekly for the actual trailing five week period on a cumulative basis (and the professional fees and expensed incurred by the court-approved restructuring professionals will not be included in those Budget expenses which are measured weekly), provided that the first measurement will not be made until thirty (30) days after March 1, 2017, together with any additional amounts to which the Secured Creditors and the Committee have afforded prior written consent, or as may be authorized by separate order of this Court; provided, however, that the use of Cash Collateral in accordance with the Budget does not create the presumption of diminution or non-diminution in the value of Opus Bank's interest (or any other Secured Creditor's interest) in the Prepetition Collateral.  Absent further order of this Court, the Debtor shall no longer be authorized pursuant to this Order to use Cash Collateral upon expiration of three  (3) business days after the date of the Termination Declaration (defined herein), provided however, that during the Remedies Notice Period (defined herein), the Debtor may use Cash Collateral in accordance

3

with the terms and provisions of the Budget solely to meet payroll obligations (if any) and to pay expenses critical to the preservation of the Debtor and its estate incurred during the Remedies Notice Period, and to pay the reasonable and necessary expenses in accordance with the terms of the Budget incurred prior to the Remedies Notice Period.  The Debtor shall provide Opus Bank and the Committee with an updated Budget for the next succeeding thirteen (13) week period within five (5) calendar days prior to the end of each calendar month.

(C)    During the Cash Collateral Period (defined herein), the Debtor will provide a monthly report to the Committee and the Secured Creditors disclosing a monthly budget-to-actual report of all Budget line items reported for each month during the Cash Collateral Period; provided that this reporting requirement is without prejudice to the respective rights of Opus Bank and the Committee to request additional financial information from the Debtor throughout the period covered by this Order and the right of the Debtor to object to any such request.  The Debtor shall provide the Secured Creditors and the Committee, through their respective counsel and financial advisors (if any), reasonable access to its financial and accounting personnel for the purpose of verifying budgets, actual results and other financial information provided to the Secured Creditors and the Committee upon reasonable advance written notice, during normal business operating hours and without disruption to the Debtor's business operations *subject, however*, to any attorney-client or work-product privilege(s) which shall not be deemed to be waived and except as may be otherwise provided by separate order of the Court.  The Debtor shall also provide the Secured Creditors and the Committee, through their respective counsel and advisors (if any), with reasonable access to the collateral for the purpose of inspecting and valuing the collateral, copies of insurance certificates and policies for such collateral, and other financial reports reasonably requested by the Secured Creditors or the Committee;

4

(D)       As adequate protection for the interests of the Secured Creditors in the Cash Collateral, and not to exceed the amount of Cash Collateral used by the Debtor, the Secured Creditors are granted, without any further action, continuing liens ("Continuing Liens") as of the Petition Date on and security interests in all property of the Debtor of the same description, type and nature as was subject to the Secured Creditors' pre-petition liens and security interests in respect of the Debtor's use of such prepetition property of the Debtor against any diminution in the value of the Secured Creditors' interest in such prepetition property of the Debtor from and after the Petition Date, with such Continuing Liens to have the same extent, validity and priority as the liens held by the Secured Creditors in such property as of the Petition Date; *provided, however*, that the Continuing Liens shall be at all times subject and junior to the Administrative Carveout (as hereinafter defined), the Professional Fee Carveout (as hereinafter defined), and the Committee Member Expense Carveout (as hereinafter defined), and the Continuing Liens shall not include, attach to, or be payable from any claims, causes of action or proceeds thereof under §§ 544-550 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute (collectively, the "Avoidance Actions").  This Order makes no finding as to whether (i) the Continuing Liens, Replacement Liens (defined herein) or Adequate Protection Superpriority Claim (defined herein) apply to  any successful action by the Debtor's estate or its representatives against the directors and/or officers of the Debtor for breaching their fiduciary duties to the Debtor, the Debtor's estate or the Debtor's creditors, including the proceeds of any director or officer or related liability insurance policy (collectively, the "D&O Action Proceeds") or (ii) the D&O Action Proceeds are a part of the Carveout (defined herein); provided, however, the entry of this Order shall not be deemed as any acknowledgement or admission by the Debtor or any other person

that any such claims or causes of action exist against any directors and/or officers of the Debtor or affiliates of the Debtor;

(E)    As additional adequate protection, the Debtor shall make monthly payments to Opus Bank in the amount of $21,017.01 with the first payment to be paid by the Debtor to Opus Bank no later than March 31, 2017 and subsequent monthly payments to be made by the Debtor to Opus Bank not later than the 21st day of each successive month thereafter (e.g., the monthly adequate protection payment for the month of April 2017 to be made not later than April 21, 2017), unless otherwise agreed to by Opus Bank, and unless the 21st day of such month is not a business day, in which case such deadline shall be the first business day preceding the 21st day of such month, reflecting a monthly interest only payment at the contract rate (the "Adequate Protection Payments"); provided, however, the Adequate Protection Payments  (i) shall be without prejudice to, or waiver of, the respective rights of the Debtor or the Committee to seek to have such amounts credited against the principal portion of the Prepetition Obligations in the event it is ever determined by the Court that Opus Bank was not entitled to adequate protection under 11 U.S.C. § 361 and/or was not an over-secured creditor within the meaning of  11 U.S.C. § 506; and (ii) made to or for the benefit of Opus Bank pursuant to this Order shall not constitute diminution in the value of the Secured Creditors' interest in the Prepetition Collateral or other property of the Debtor described herein in Paragraph 2.E.  In addition, the Retained Professionals (defined herein) may be paid from the Cash Collateral, but only in accordance with the terms of this Order and the *Order Granting Debtor's Motion for Entry of Order Authorizing and Establishing Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals* [ECF No. 70] (the "Interim Compensation Order") and such monthly payments to the Retained Professionals (if any) shall be made by the Debtor on the 28th day of each month unless the 28th day of such month

is not a business day, in which case such deadline shall be the first business day preceding the 28th day of such month;

       (F)    As additional adequate protection for the Debtor's use of the Cash Collateral, but only to the extent that the Adequate Protection Payments and Continuing Liens are not sufficient to protect against any diminution in the value of Opus Bank's interests in the Prepetition Collateral as a result of the Debtor's use of Cash Collateral from and after the Petition Date as determined by separate order of the Court and without prejudice to or waiver of the rights of the Debtor and the Committee to contest Opus Bank's entitlement to such Replacement Liens (as defined herein), Opus Bank shall be granted, without any necessity to record, valid, binding, enforceable, fully perfected, replacement liens and first priority security interests in the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located (including, without limitation, first priority liens on any cash held in the Debtor's bank accounts), and the proceeds and products thereof (the "Replacement Liens") junior only to: (i) the Administrative Carveout (as hereinafter defined);  (ii) the Professional Fee Carveout (as hereinafter defined); (iii) the Committee Member Expense Carveout; (iv) the Avoidance Actions; and (v) valid, enforceable, properly perfected and unavoidable prepetition liens existing on the Petition Date upon assets that do not constitute Opus Bank's Prepetition Collateral.  For the avoidance of doubt, the Replacement Liens shall neither attach to nor be payable from claims, causes of action or the proceeds of any Avoidance Actions.  Further, to the extent the Adequate Protection Payments, Continuing Liens, and Replacement Liens do not adequately protect against the diminution in Opus Bank's interest in the value of the Prepetition Collateral from and after the Petition Date as determined by separate order of the Court and without

prejudice to or waiver of the rights of the Debtor and the Committee to contest Opus Bank's entitlement to any Adequate Protection Superpriority Claim (as defined herein), Opus Bank shall have a post-petition superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") against the Debtor, with recourse to all prepetition and post-petition property of the Debtor and all proceeds thereof, under Bankruptcy Code sections 503 and 507 against the Debtor's estate, which Adequate Protection Superpriority Claim shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor or its estate and over all other administrative expenses of any kind, including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, or 1114, or otherwise and including those resulting from the conversion of this case pursuant to Bankruptcy Code section 1112, subject and junior only to the Carveouts (defined herein), and the Adequate Protection Superpriority Claim shall neither attach to nor be paid from claims, causes of action or the proceeds of the Avoidance Actions;

(G)    Opus Bank's Continuing Liens and Replacement Liens shall be deemed duly and automatically perfected under all applicable laws, and no further notice, filing, recordation or order shall be required to effectuate such perfection.  Debtor and Opus Bank shall not be required to execute mortgages, security agreements, corporate resolutions or other documents or record further financing statements or take any other steps under applicable law, or otherwise, to create or perfect the Continuing Liens and Replacement Liens authorized hereunder; provided, however, neither the Continuing Liens nor the Replacement Liens shall attach to or be payable from the proceeds of any causes of action that could be brought under §§ 544-548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute.

8

(H)    The Continuing Liens and Replacement Liens shall be at all times subject and junior to (together, the following sub-paragraphs "(i)" through "(v)", collectively, the "Carveouts"):  (i) all unpaid fees due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and all unpaid fees required to be paid to the Clerk of the Court (collectively, the "Administrative Carveout");   (ii) the following carveout for the benefit of the Retained Professionals (defined herein), as agreed to by Opus Bank:

(i) the claims of the respective retained professionals of the Debtor, the Committee and any other statutorily appointed committee in this Chapter 11 Case (collectively, the "Retained Professionals") for fees and expenses incurred at any time on and after the Petition Date and prior to the delivery of a Termination Declaration (defined herein) in a total amount comprised of the sum of the following three components, including (i) the amounts paid to the Retained Professionals under the Interim Compensation Order, *plus* (ii) the amount of funds located in the Holdback Escrow Deposit, *plus* (iii) the additional amount of $130,000; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code (such fees and expenses described in this clause (i), the "Pre-Termination Date Expenses" and the permitted amount thereof, the "Pre-Termination Date Amount"); (ii) the claims of the Retained Professionals for fees and expenses which were incurred on and after the delivery of a Termination Declaration; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code and do not exceed $50,000 in the aggregate for all of the Retained Professionals of the Debtor and $25,000 in the aggregate for all of the Retained Professionals of the Committee, plus the fees and expenses incurred by any professionals engaged by any successor to the Debtor, including, without limitation, any trustee appointed under chapter 11 or 7 of the Bankruptcy Code or any examiner with expanded powers, in an aggregate amount not to exceed $5,000 (such fees and expenses described in this clause "(ii)" the "Post-Termination Date Expenses" and the permitted amount thereof, the "Post-Termination Amount" and, together with the Pre-Termination Date Amount, collectively, the "Professional Fee Carveout"); provided, however, the Debtor is required to escrow by depositing into a separate bank account on a monthly basis the twenty (20%) percent holdback amount for professional fees for each of the Retained Professional (the "Holdback Escrow Deposit") required by paragraph 2(f), or such other amount pursuant to the terms of paragraph 2(g) and (h), of the Interim Compensation Order, provided however that the Debtor shall do so on a 30-day trailing basis (e.g., the Debtor shall make the initial Holdback Escrow Deposit not later than April 30, 2017 for the statements of services for the month of March, 2017); provided, further, however,

that the fees paid to any Retained Professional, together with any Holdback Escrow Deposit, shall not exceed the line-item fees for such Retained Professional as set forth in the Budget in any given month;

(iii) the reasonable and documented expenses payable to members of the Committee as approved by separate order of the Court (the "Committee Member Expenses") in an amount not to exceed $5,000 for Committee Member Expenses in the event that there is no in-person meeting (a "Meeting") of the Committee, the Debtor and the Retained Professionals or (b) $10,000 for Committee Member Expenses in the event that there is an in-person Meeting (the "Committee Member Expense Carveout"); and (iv) the Avoidance Actions.

Neither the Continuing Liens nor Replacement Liens shall attach to, or be payable from the claims, causes of action or proceeds of any of the Carveouts.

(I)    The Debtor's authorization to use Cash Collateral shall be effective through and including January 15, 2018 (the "Cash Collateral Period"), unless otherwise terminated hereunder, or extended with consent of Opus Bank or by separate order of the Court;

(J)    The Debtor's authorization to use the Cash Collateral shall terminate on the earlier of: (i) the expiration of the Cash Collateral Period; (ii) by entry of a further order of this Court; or (iii) the occurrence of any of the following (an "Event of Default") unless such Event of Default is otherwise waived by Opus Bank, provided that Opus Bank shall notify the respective counsel for the Debtor and the Committee in writing by e-mail of any noncompliance by the Debtor with the terms and provisions of this Order (a "Termination Declaration"), and the Debtor shall have the greater of three (3) business days from the receipt of the Termination Declaration or the date determined by the Court to cure such noncompliance (the "Remedies Notice Period"):

(i)    the failure of the Debtor to materially comply with the terms and provisions of this Order, including but not limited to, the timely payment to Opus Bank of the Adequate Protection Payments; or

10

(ii)     any post-petition lien (other than any lien(s) recorded against the property that expressly relate back to a date no later than the petition date) is recorded against the assets of the bankruptcy estate, except any lien granted on assets of the bankruptcy estate to secure post-petition financing to which lien the Secured Creditors have consented or which has been granted pursuant to an order of this Court; or

(iv)     the appointment of a trustee, or conversion of this case to a Chapter 7 case.

(K)     Upon the occurrence of a Termination Declaration, (i) the Debtor shall no longer have authority to use the Cash Collateral, except for the limited use of Cash Collateral provided in Paragraphs 2.B and 2.H hereof, and (ii) the Secured Creditors shall be entitled to an expedited hearing, on at least three (3) business days' notice to (a) the Debtor and its counsel, (b) the Committee and its counsel, and (c) any other party or entity who may claim a lien against the Debtor's assets, on relief from the automatic stay under 11 U.S.C. § 362.  Notwithstanding a Termination Declaration, the foregoing are without prejudice to the respective rights of the Debtor and the Committee to oppose such relief and to otherwise seek and obtain an entry of an order by the Court that an Event of Default has not occurred and/or authorizing continued use of Cash Collateral on an expedited basis; and

(L)     The Debtor shall cause to be served on the Secured Creditors and their counsel copies of all pleadings, notices, proposed orders and other papers tendered to or filed by Debtor with this Court in connection with this Chapter 11 case.

3.     <u>Carve-Out Limitations</u>.  Neither the payment of any professional fees, nor the Professional Fee Carve Out shall include payment for any fees and expenses, if any, of the professionals incurred directly or indirectly, in respect of, arising from or relating to:

11

a.  the initiation, joinder, support, investigation, or prosecution of any action to contest any indebtedness owed to Opus Bank, or the validity of any liens granted to Opus Bank; provided, however, that the Committee may use Cash Collateral in an amount not to exceed $20,000 to review the liens and security interests granted to Opus Bank; or

b.  the commencement, support, investigation, or prosecution of any action or proceeding of any claims, causes of action, or defenses against Opus Bank, or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Opus Bank.

4.      Nothing herein contained shall constitute an acknowledgment that the Secured Creditors are adequately protected nor shall it prejudice, impair or otherwise affect the respective rights of the Secured Creditors and the Committee under the Bankruptcy Code and Bankruptcy Rules or other applicable law, including, without limitation, at any time to object to the continued use of Cash Collateral or to seek: (i) the appointment of a trustee under section 1104 of the Bankruptcy Code; (ii) relief from the automatic stay under 11 U.S.C. § 362; (iii) additional adequate protection, including protection under 11 U.S.C. §§ 362, 363, 503 and 507; (iv) relief in the event Debtor has used Cash Collateral contrary to the provisions of 11 U.S.C. § 363(c)(2) or hereafter use Cash Collateral contrary to the provisions of this Order; or (v) dismissal or conversion of this case under 11 U.S.C. § 1112; *provided, however,* that the foregoing shall be without prejudice to or waiver of the Debtor's rights, claims, and defenses hereunder or under the applicable provisions of the Bankruptcy Code and other applicable law.

5.      <u>Binding Nature of Stipulations and Other Matters</u>.  Subject only to the right of  the Committee to bring a Challenge Action solely with respect to the Excluded Items as set forth in Paragraph 6, and the right to bring any claim or cause of action which may arise based on any actionable conduct by or on behalf of Opus Bank committed hereafter, upon entry of the April Order and as reiterated by this Order:

      a.   the Debtor Stipulations shall be binding upon the Debtor and all other persons, entities, and/or parties in all circumstances;

      b.   the Prepetition Obligations owed to Opus Bank shall automatically constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, subordination, defense, or avoidance for all purposed in this case and any subsequent chapter 7 case;

      c.   Opus Bank's liens upon the Prepetition Collateral shall be deemed to constitute, as of the petition date, validly perfected, unavoidable, first priority liens against the Prepetition Collateral, which liens shall not be subject to challenge by the Debtor or any other person, entity, or party; and

      d.   neither the Debtor, nor any other person, entity, or party shall seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of Opus Bank prior to the Petition Date.

6.      <u>Limited Potential Challenge Action by Committee for Excluded Items Only</u>. Notwithstanding any other provisions of this Order, only the Committee may commence an adversary proceeding against Opus Bank for the limited purpose of challenging the validity, extent, priority, perfection, enforceability, and non-avoidability of Opus Bank's liens against the Excluded

Items identified below only  (a "Challenge Action").  The Committee is hereby granted standing and the authority to file a Challenge Action at any time on behalf of the Debtor or the Debtor's estate, as applicable, with respect to the Excluded Items identified below without further motion seeking authority to bring such action and without further order of this Court.  Nothing in this Order vests or confers on any Entity (as defined in the Bankruptcy Code), except for the Committee, standing or authority to pursue any Challenge Action.  Pursuant to the Committee's investigation and to avoid the filing of a Challenge Action at this time with respect to the Excluded Items, however, the Court notes that Opus Bank agrees that the Prepetition Collateral, Continuing Liens, Replacement Liens (with respect to the Prepetition Collateral only) and Adequate Protection Superpriority Claim (with respect to the Prepetition Collateral only) (collectively, the "CLCs") do not include the following (collectively, the "Excluded Items"):

    a.  Amounts existing in deposit accounts held in the name of the Debtor (Stemtech International, Inc.), including but not limited to the two deposit accounts referenced in the Debtor's monthly operating reports filed with the Court (HSBC account ending in 0759 and Fifth Third Bank account ending in 2396), that could be perfected only by a deposit account control agreement as no deposit account control agreements exist for any of the deposit accounts held in the name of the Debtor; provided, however, that Opus Bank asserts that all amounts held in deposit accounts in the name of the Debtor are subject to the CLCs to the extent that such amounts represent the proceeds of Opus Bank's collateral, including but not limited to dividends, accounts, and inventory sales proceeds, and the Committee reserves the right to contest any such assertions by Opus Bank;

14

b.  Assets rightfully held in the name of any direct or indirect subsidiary of the Debtor because the General Security Agreement dated December 3, 2013 and the related UCC Financing Statements filed with the Department of State of the State of Delaware on December 6, 2013, January 21, 2015 and November 25, 2015, refer only to the Debtor---but not to the Debtor's direct or indirect subsidiaries---as the sole entity granting a lien in favor of Opus Bank.  As such, Opus Bank's lien extends only to the assets of the Debtor; provided, however, that Opus Bank asserts liens against all amounts received by or payable to the Debtor from the subsidiaries, including from inventory sales, other accounts receivable, dividends, return of capital, or other proceeds due to the Debtor from the subsidiaries; and the Committee reserves the right to contest any such assertions by Opus Bank; and

c.  The Debtor's registered copyrights and copyright applications (if any).

7.     No Challenge Actions Except by Committee for Excluded Items Only.  Except for the Committee with respect to the Excluded Items only, all parties in interest have been barred forever under the April Order, and are hereby forever barred from commencing a Challenge Action or challenging in any manner the liens or claims of Opus Bank and shall be bound by the waivers, Debtor Stipulations, and terms set forth in this Order.  Except for the Committee's ability to bring a Challenge Action at any time with respect to the Excluded Items only, any such claims or actions against Opus Bank are barred and forever waived and released.

8.     Retention of Challenge Action Defenses.  The legal and equitable claims, counterclaims, defenses, and/or rights of offset and setoff of Opus Bank in response to any Challenge Action are reserved, and the ability of a party to commence a Challenge Action shall in

no event revive, renew, or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge Action.  Despite the commencement of a Challenge Action, Opus Bank's prepetition claims and liens shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code section 502(d) and not subject to subordination under Bankruptcy Code section 510 until such time as a final and non-appealable judgment and order is entered sustaining such Challenge Action in favor of the plaintiffs therein.

9.    Good Faith Negotiation.  The terms of the use of Cash Collateral set forth in this Order have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtor, the Committee and Opus Bank.  Pursuant to Bankruptcy Code sections 105, 361, and 363, Opus Bank is hereby found to be an entity that has acted in "good faith" in connection with the negotiation and entry of this Order, and Opus Bank is entitled to the protection provided under Bankruptcy Code section 363(m).

10.    Successors and Assigns.  This Order shall be binding on and inure to the benefit of Opus Bank, the Debtor, the Committee and its members but only in their capacity as members of the Committee and not in their individual or individual-corporate capacity, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code.  Except as set forth herein with respect to a Challenge Action, no rights are created under this Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

11.     Unless agreed to in writing by the affected Secured Creditors and the Committee or authorized by this Court, the Debtor shall not create, assume, or hereafter cause to exist any lien or security interest in the property of the estate or the Cash Collateral in favor of any entity other than Secured Creditors.

12.     Any and all controversies or disputes over the interpretation or performance of the terms and conditions of this Order shall be determined by this Court upon application or motion made by the Secured Creditors, the Debtor, the Committee or other parties-in-interest; the Debtor, the Secured Creditors and the Committee agree that any such application or motion by either of them may be heard on at least seventy-two (72) hours' notice to the other party; the foregoing shall include, without limitation, any motion to compel performance of the terms and provisions of this Order.

13.     Except to the extent of the Carveouts and without prejudice to the right of the Committee to bring a Challenge Action, no expenses of administration of this case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from Opus Bank's liens, security interests or mortgages in or on either the Prepetition Collateral or any collateral subject to Continuing Liens or Replacement Liens, pursuant to Bankruptcy Code sections 105(a) or 506(c) or any similar principle of law or equity without the prior written consent of Opus Bank, and no such consent shall be implied from any other action, inaction, or acquiescence by Opus Bank.

14.     Subject to the right of the Committee to bring a Challenge Action, Opus Bank shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to Opus Bank.

15.     Except as expressly provided in this Order, no claim or lien having a priority senior to or *pari passu* with Opus Bank's Continuing Liens, Replacement Liens, or Adequate Protection Superpriority Claim shall be granted or allowed, and the Continuing Liens and Replacement Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code section 551 or subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

16.     This Order is without prejudice to the rights of Debtor, the Committee and the Secured Creditors to seek modification of it or relief in accordance with applicable law.

17.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Submitted by:

Michael D. Seese, Esq.
Seese, P.A.
101 N.E. 3rd Avenue, Suite 410
Ft. Lauderdale, FL  33301
Phone#: (954) 745-5897

Copies furnished to:

Michael D. Seese, Esq., who is directed to serve a copy of this order upon all interested parties.

7756953-16                                                                                          #52573776_v_